# Jones's Appeal.

1. A contract was made in contemplation of a marriage, which was consummated: when made, the husband, unknown to the wife, was insolvent: the contract was valid as against creditors.

2. By the contract the husband was to secure to the wife annually after his death $1500 during widowhood, or in case of her marriage $500 for life. In the distribution of his estate, her claim was to be estimated at the value of an annuity of $500.

3. The rule in cases of uncertainty of this kind is to assess the damages on the basis of the lowest sum.

4. Where goods are delivered and there is no evidence of their value, it will be presumed to be the lowest price of goods of the description.

5. The Acts of Congress do not declare an unstamped instrument void, but that it shall not be admitted to record or received in evidence.

6. Before an auditor an unstamped instrument was received in evidence without objection; it was too late to set it aside when the report came up for confirmation.

7. It is wrong to decide on the ground that incompetent evidence had been taken by the auditor, no objection having been made before him.

May 24th 1869.  Before THOMPSON, C. J.; READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Dauphin county*: No. 40, to May Term 1869: In Andrew J. Jones's Estate.

On the 17th of June 1864 Andrew J. Jones, of Harrisburg, Pennsylvania, and Sarah A. Buckman, of Burlington, New Jersey, entered into a contract which recited that a marriage was about to be solemnized between them; and by which "the said party of the first part hereby obligates himself to *settle upon and secure* to the said party of the second part (should the said marriage be solemnized between them as intended), by will or *otherwise*, an annuity of $1500 per annum, to be paid to her the said party of the second part, in semi-annual payments out of his estate, in case of her surviving him, from the time of his death until the death or marriage of the said party of the second part, whichever shall first happen thereafter, and no longer; and if the said party of the second part survive the said party of the first part, and cease to be his widow by marrying again, then in that case the said party of the second part shall receive from the time of such second marriage, during her natural life, the sum of $500 annually, and no more."

She, in consideration of the premises, released all claim on her intended husband's estate.  The contract was not stamped.  The marriage was consummated shortly afterwards, and on the 13th of January 1867 Jones died intestate and insolvent, leaving his wife surviving him.  An auditor was appointed to make distribution of his estate amongst his creditors.

Before the auditor Mrs. Jones, as a creditor, presented a claim for $20,000, based upon the marriage contract.  The question of the validity of the instrument for want of a stamp was not raised before the auditor.

The auditor reported that at the time of making the contract Jones was insolvent; and * * "as against creditors, the auditor is of the opinion that the agreement is of no consequence, and that she can recover nothing under the agreement, or for the non-performance of it, until all debts are fully paid. _ This claim is therefore disallowed."

Mrs. Jones excepted to the report of the auditor.  After argument, the opinion of the Orphans' Court was delivered by Pearson, P. J., who said:—

"It is said, however, that the parties contemplated that the intended settlement might be secured to the wife by *will*, and that if Jones had made his will, giving his wife $1500 a year, the contract would have been fully executed on his part, the wife could have demanded no more, and yet the debts must all be paid before the wife could recover anything under the bequest.  That

is not our construction of this contract. Mr. Jones 'obligates himself to *settle upon and secure* to the said party of the second part, by will or *otherwise*, an annuity of $1500 per annum, to be paid to her in semi-annual payments out of his estate in case of her surviving him, from the time of his death until the death or marriage of the said wife,' &c. He is obligated not only to *settle* this sum upon her but to *secure it to her*. If his will does not render it *secure*, she may require it to be done '*otherwise*,' and refuse to take under his will. It is a covenant on his part to settle that sum upon and secure it to her. It is a binding contract on what the law looks upon as a consideration of the highest order. The claim stands equal under the marriage article with that of any other creditor. It may be said to endanger the rights of others, and to be contrary to moral honesty, to permit a man, by an antenuptial contract, to pass over a large portion of his estate to his intended wife, whereby he will have a future benefit and maintenance, and his creditors be defrauded of their just dues. If the creditors have liens they cannot be disturbed—if they had none he could sell the property. If they can show that the woman knew of his indebtedness, they may defeat the settlement. Failing to prove this she is considered a purchaser for value.

" We are therefore of the opinion that her claim is equal to that of any other creditor. But for how much? We have come to the conclusion that it can be for no more than was due on the article at the time of the distribution; the residue must be rejected for uncertainty." * * *

The court further decided that the contract was void for want of a stamp and could not be received in evidence; on this ground the report of the auditor was confirmed.

Mrs. Jones appealed to the Supreme Court and assigned the confirmation of the report for error.

*Miller & McAlarney* and *R. A. Lamberton*, for appellant.—As to the stamp, referred to Act of Congress, July 10th 1866, 14 Stat. at Large 143; Carpenter *v.* Snelling, 97 Mass. Rep. 452. Instruments made without a stamp to defraud the government, not those from which a stamp has been innocently omitted through inadvertence or mistake, are avoided: McGovern *v.* Hoesback, 3 P. F. Smith 176; Beebe *v.* Hutton, 47 Barb. 187; Vorebeck *v.* Roe, 50 Id. 302; Blunt *v.* Bates, 40 Ala. 470; Hallock *v.* Jaudin, 34 Cal. 167; Crocker *v.* Foley, 13 Allen 376; Tobey *v.* Chipman, Id. 124; Topf *v.* King, 26 Ind. 391. They cited Kline *v.* Kline, Am. Law Register, October 1868, p. 713; Tyler on Infancy and Coverture, 464, 467, 482, and the authorities there cited to sustain the validity of the marriage contract.

[Jones's Appeal.]

*B. F. Etter, J. H. Briggs* and *D. Fleming,* for Jones's creditors' appellees, as to the contract, commented on Magniac *v.* Thompson, 7 Peters 348; Dundas *v.* Dutens, 1 Ves. Jr. 196; Taylor *v.* Jones, 2 Atk. 600; Rundle *v.* Murgatroyd, 4 Dallas 304, 1 Parsons on Contr., sect. 2; Brightly's Eq. Jur. 108–10; Reed *v.* Reed, 2 Jones 117; Mateer *v.* Hissim, 3 Penna. R. 160; Thompson *v.* Dougherty, 12 S. & R. 448; Zerbe *v.* Miller, 4 Harris 488; Sexton *v.* Wheaton, 8 Wheat. 229; Davidson *v.* Graves, Riley's Chancery 219; McAllister *v.* Marshall, 6 Binney 338.

As to the stamp: Act of Congress of October 1st 1862, sects. 94, 95; McGovern *v.* Hoesback, 3 P. F. Smith 176; Tripp *v.* Bishop, 6 Id. 424; Garland *v.* Lane, 46 N. H. 245; Plessinger *v.* DePuy, 25 Ind. 419; Beebe *v.* Hutton, 17 Barb. 187.

The opinion of the court was delivered, July 6th 1869, by

SHARSWOOD, J.—The opinion of the learned judge below demonstrates so ably and conclusively that the contract between A. J. Jones and the appellant, in contemplation and consideration of marriage, and not pretended to have been fraudulent in fact, at least as far as she was concerned, was valid as against creditors, that it is unnecessary to add anything upon that subject.

The contract was broken on the death of the husband without having performed its stipulations. His obligation was to secure an annuity to his wife after his death. What should be the measure of damages which the appellant ought to recover, was undoubtedly a question of considerable difficulty—more especially as there is not, as far as the industry of the counsel has been able to discover, any authority which throws light upon it. But that is no reason for rejecting her claim altogether, or confining it, as the learned judge below thought it ought to be confined, to the arrears of the annuity due her at the time of presenting her demand or commencing her action. On that theory, if the husband's estate had been sold and converted into money and a distribution made within a year from his decease, she would receive nothing or at most only a proportional sum for the time which had elapsed, considering the annuity as apportionable, which, as it was evidently intended for her support, would doubtless be the rule. But she might have commenced her action against her husband's administrators immediately upon his death. She certainly could have recovered something, otherwise here would be an acknowledged right violated—and no remedy, which would be an anomaly. Had the annuity been to her absolutely for life, there would be no difficulty in ascertaining from the evidence of experts in the business of granting life annuities what was its worth at the time of breach—in other words for what sum such an annuity could be purchased, taking into consideration the age and sex of the proposed annuitant, and

other circumstances bearing upon the risk. But this was not an absolute annuity of $1500 for life, but subject to be reduced to $500 in the event of her second marriage. The learned judge below appeared to think that this introduced such an element of uncertainty as precluded her from making any claim at all on that footing. But the recognised rule in cases of uncertainty of this kind is not to reject altogether but to assess the damages on the basis of the lowest sum. Thus if the plaintiff prove the delivery of goods, but give no evidence of their value, it will be presumed that the articles were of the lowest price of goods of that description: Clunnes *v.* Pezzey, 1 Camp. 8. Want of evidence of the value of services does not preclude a recovery on a *quantum meruit,* for the plaintiff is entitled to at least nominal damages: Bash *v.* Bash, 9 Barr 260. Certainly no prudent company in granting an annuity upon these terms would make any allowance for the chance of the reduction of the sum, that depending upon the voluntary choice of the annuitant, which she might never exercise and would be interested never to exercise. They would demand sufficient to cover the risk of the larger sum for the whole life. But there is a conclusive reason for not adopting that rule in the assessment of the damages; for immediately on the receipt of the amount she would be released from the condition and could enter into a second marriage with impunity. It is clearly a case therefore for the application of the principle just adverted to, which, where there is uncertainty or want of evidence, confines the claimant to the least sum. We think therefore that the appellant would be entitled to recover the value to her of an annuity of $500 during her natural life. She might doubtless elect not to claim on the footing of damages for a breach, but treat the contract as subsisting and recover her annuity from time to time as it fell due from her husband's estate. But it is very clear that she could not demand both—the arrears and damages. That would be to claim in inconsistent rights, which a party is never permitted to do. A verdict and judgment in either action would be a bar to the other. The appellant then should have been put to her election.

We think the court below erred in setting aside the contract altogether for want of a stamp. We do not mean to decide the point, raised by the counsel of the appellant, and for which they cite Carpenter *v.* Snelling, 97 Mass. 452, that the Act of Congress does not apply to evidence in the state courts, because the decision of that question is unnecessary in this case. Whatever may have been the proper construction of the Act of July 1st 1862 (12 U. S. Stat. at Large 475), that act was superseded by the subsequent Act of June 30th 1864, §§ 151, 163 (13 Id. 291, 295), as amended and supplied by that of March 3d 1865 (Id. 481), and of July 13th 1866, 14 U. S. Stat. at Large 143.

[Jones's Appeal.]

These acts do not declare an unstamped instrument void, but simply that it shall not be admitted to record, or received in evidence in any court. Here the contract was offered in evidence before the auditor and received without objection. No exception was filed. It was too late then to set it aside when the report came up for confirmation. It would be wrong in any case to decide on the ground that incompetent evidence had been admitted by an auditor, where no objection or exception was taken, for the party might have supplied it by other competent testimony. It would be manifestly unjust here, because the effect was to deprive the appellant of the right which she had under the existing Acts of Congress on the payment of the penalty to have the instrument stamped by the collector of the proper district at any subsequent period, and thus remedy the defect. All just and reasonable stamp laws contain such a provision—they would work intolerable injustice without it. The court below erred, therefore, in confirming the report. It should have been set aside and recommitted to the same or another auditor, with instructions to hear evidence, and report the amount of appellant's claim according to the principles set forth in this opinion, and the *pro rata* dividend which she with the other creditors will be entitled to receive of the fund in the hands of the administrators.

Decree reversed at the costs of the appellee, and record remitted for further proceedings.