## Fridenberg's Estate.

*Transfer inheritance tax—Antenuptial agreements—Money payable to wife under antenuptial agreement out of estate in case she should survive decedent.*

A specific sum of money payable to the wife of decedent under an antenuptial agreement, by which she was to receive said sum "from his estate as his wife, in the event of her surviving him . . . unless he shall by will give or bequeath to her a larger sum," is not subject to transfer inheritance tax.

Exceptions to adjudication. O. C. Phila. Co., July T., 1925, No. 2132.

Van Dusen, J., Auditing Judge—In consideration of the marriage, the widow released "all right and dower and all other legal and statutory rights and any and all other right, claim and interest whatsoever in the separate estate of the said Mone I. Fridenberg." Decedent agreed "that, in consideration of said marriage the said Sadie I. Spicker shall have and receive from his estate as his wife, in the event of her surviving him, the sum of $15,000."

The statute taxes "the transfer of any property . . . when the transfer is by will or by the Intestate Laws of this Commonwealth from any person dying seized or possessed of the property." Nothing was transferred in this case by the will, which mentions the $15,000, but does not bequeath it. Nothing passed by the intestate laws, as the widow's right to take against the will, which she attempted to exercise, was blocked by the antenuptial agreement. No property was transferred at death or at any other time. The widow had a contractual claim as for a debt and would come in with other creditors if the estate was insolvent.

It is argued that the widow's rights under the agreement are substituted for her rights under the law in consideration of a release of those rights, and should, therefore, be taxed in the same way. But that is not the whole story. "An equally important consideration for the antenuptial agreement, if not the most important, is the marriage." By the agreement and in consideration of marriage she acquired a contractual right which would remain the same if the estate of the husband should shrink, or if the intestate laws should be changed, or if the husband should become domiciled in a state where the widow had no right to take against the will.

Even if there was a substitution of the contractual right for the legal right, it would not follow that the tax would apply to the substituted right. If something ought to be taxed which has been overlooked, and if, as argued, there is opportunity for tax evasion through antenuptial agreements and agreements with heirs, the legislature can easily correct it.

In this view I am confirmed by the cases In re Vanderbilt, 184 N. Y. (App. Div.) 661; 226 N. Y. 638; Hill v. Treasurer, 227 Mass. 331: See *contra* People v. Field's Estate, 248 Ill. 147.

If the agreement did not promise a specific sum, but merely limited the amount which the widow might take against the will, her right would be materially different. What she would take within the limit would be by virtue of the law, and if the estate amounted only to $15,000, she would get only $7500. Under the view I have taken, her share would then be taxable.

If the sum in question is not taxable, the executor may not deduct the tax in making distribution, even though it has been paid. He should have contested the payment. As my conclusion affects the right of the Commonwealth to collect tax in other similar cases, I have asked counsel, who customarily appears for the Commonwealth, to take part in the argument, and I have had the benefit of his views.

Fridenberg's Estate.

The schedule of distribution approved May 17, 1926, is amended by striking out the deduction of $300 tax from the award of $15,000 to Sadie S. Fridenberg.

*James Gay Gordon*, for accountant (with him *Allen S. Morgan*), and *Abraham Berkowitz*, for Commonwealth, exceptants.

*Jacob Singer* (with him *Furth, Singer & Bortin*), contra.

LAMORELLE, P. J., March 25, 1927.—Mone I. Fridenberg made his will in 1917. On July 23, 1922, he married Sadie S. Spicker. Prior, however, to this marriage, an antenuptial agreement was executed July 20, 1922, under seal, wherein each of the contracting parties agreed to waive all rights in and to the estate of the other, not only to what each of them then had, but also to what either might subsequently acquire, and each was given the right of testamentary disposition as if sole. In consideration of marriage, however, Sadie S. Spicker was to receive as his wife the sum of $15,000 from Mone I. Fridenberg's estate in case she survived him.

She survived her husband and elected to take against the will. Her husband's collaterals (there being no issue of the marriage), who were legatees, met her demand by producing at the time of the audit this antenuptial contract. Her contention that she was not fully informed by her prospective husband as to the amount of his property was duly considered by the Auditing Judge, and he found as a fact that the agreement was valid and thereupon awarded her the $15,000, the amount which Mone I. Fridenberg had agreed should be paid in consideration of her fulfillment of her obligation to marry.

The executor and the collaterals contend that this sum is to be diminished by transfer inheritance tax thereon. As she takes neither under the will, nor against the will, nor under the intestate law, we know of no act of assembly under which such tax may be properly and legally assessed.

A gift in contemplation of death in some instances is taxable (Wanamaker's Estate, 8 D. & C. 569); a gift in contemplation of marriage, as a subject of taxation, is, to say the least, a novelty! But to tax the payment of a round sum in consideration of marriage, where the claimant has performed her part of the contract, is injecting something into the contract not covered thereby and an uncalled for interference with the rights of one of the contracting parties.

The fact that the due date is fixed as of the time of the death of the prospective husband neither voids the agreement nor reduces the amount agreed to be paid. The fact that the consideration is marriage—and that the mariage has been performed—does not differentiate the case from any ordinary contract, upon sufficient consideration, to pay money at the time of death.

It is contended, however, that she takes as "wife" and not as creditor. This contention ignores the fact that the contract entered into before the marriage waived all her rights which the law would give her because of her wifehood and widowhood. That she is described as "wife" does not impair her contractual rights created prior to the time she became a wife. If she takes at all, she must take as a creditor. Her subsequent marriage, though it created a different relation, in no way abrogated the right accruing because of her performance of her contract; neither does the fact that the estate is to pay the money affect her position as creditor; she was to be paid conditioned on survivorship; the estate necessarily becomes the source of payment.

The legal consequence of a contract is not to be enlarged, curtailed, measured or determined by descriptive words. Had she not become the wife, she was entitled to nothing. Having become the wife, she was entitled to the agreed sum. It was so nominated in the bond.

That a party to an antenuptial contract is to be treated as a creditor and so paid is well settled.

In Jones's Appeal, 62 Pa. 324, the prospective husband had obligated himself to settle upon and to secure by will or otherwise an annuity in event of survivorship. Said the lower court: "It is a covenant on his part to settle that sum upon and secure it to her. It is a binding contract on what the law looks upon as a consideration of the highest order. The claim stands equal under the marriage article with that of any other creditor. It may be said to endanger the rights of others, and to be contrary to moral honesty, to permit a man, by an antenuptial contract, to pass over a large portion of his estate to his intended wife, whereby he will have a future benefit and maintenance, and his creditors be defrauded of their just dues. If the creditors have liens, they cannot be disturbed; if they had none, he could sell the property. If they can show that the woman knew of his indebtedness, they may defeat the settlement. Failing to prove this, she is considered a purchaser for value. We are, therefore, of the opinion that her claim is equal to that of any other creditor."

And Mr. Justice Sharswood, for the Supreme Court (at page 327), said: "The opinion of the learned judge below demonstrates so ably and conclusively that the contract between A. J. Jones and the appellant, in contemplation and consideration of marriage, and not pretended to have been fraudulent in fact, at least as far as she was concerned, was valid as against creditors, that it is unnecessary to add anything upon that subject."

As we concur in the ruling of the Auditing Judge, who has considered the one question submitted at considerable length, there is no necessity in further elaboration.

All exceptions are dismissed and the adjudication is confirmed absolutely.

GEST, J., dissenting.—The decision of the question raised by these exceptions depends upon the construction of the contract or antenuptial agreement executed by Mone I. Fridenberg and Sadie S. Spicker on July 20, 1922, in pursuance of which they were married on the following July 23rd. By this contract, both parties retained the right to the ownership and control of their respective properties, including the right to dispose of the same by will, as if they were sole and unmarried, except that Fridenberg agreed, in consideration of said marriage, that Sadie Spicker "shall have and receive from his estate as his wife, in the event of her surviving him, the sum of $15,000, unless he shall by will give or bequeath to her a larger sum." And Fridenberg relinquished and waived all rights in the estate of Sadie Spicker to which he might in any manner become entitled as husband of said Sadie Spicker, and she relinquished and waived all her rights in the estate of Fridenberg as his wife, excepting the said sum of $15,000, in the event of her surviving him.

It seems clear to me that the real and only purpose of the agreement was to limit and define the part or share of Fridenberg's estate that Sadie Spicker might claim *as his wife* under the general law which gives her the right, in case of intestacy, there being no issue, to one-half of his estate (with a preferential allowance of $15,000), or, in case of a will, the right to elect to take against the will her widow's share of one-half of the estate. Marriage, which brings with it a change of the status of the contracting parties, gives to each of them these property rights in the estate of the other in the event of survivorship, and in this contract the parties agreed that these rights should be modified by substituting for the general provisions of the law a scheme of distribution which seemed to them to be proper in the circumstances of their own

case. What Sadie Spicker stipulated in exact terms was that she should receive, *as the surviving wife* of Fridenberg, the sum of $15,000 in lieu of the larger share to which she would be otherwise entitled, and the marriage of the parties was a sufficient consideration for such release.

It is, of course, true, and no one disputes it, that marriage is a valuable consideration for an obligation to pay money. The parties may, if they choose, assume the position of debtor and creditor, instead of merely modifying their rights as husband and wife. This is well illustrated by Jones's Appeal, 62 Pa. 324, where Jones, in his antenuptial contract, agreed to "settle upon and secure to the party of the second part (his intended wife), by will *or otherwise*," a certain annuity, &c., in the event of her surviving him, she releasing on her part all claims on her intended husband's estate. The marriage was consummated, the husband died insolvent and his widow was held entitled, as a creditor, to share with other creditors in the distribution of his estate. But in the present case it was agreed that Sadie Spicker should receive from the estate of Fridenberg $15,000 *as his wife*—not as a creditor.

I am, therefore, of opinion that the inheritance tax was properly deducted from the $15,000 so to be awarded to Sadie Fridenberg. Counsel at the argument cited numerous cases from other jurisdictions on both sides having more or less relevance to the questions here presented, such as Illinois *v.* Field, 248 Ill. 147; Eaton *v.* Eaton, 233 Mass. 351; Re Vanderbilt, 184 N. Y. App. Div. 661; 226 N. Y. 638; Hill *v.* Treasurer, 227 Mass. 331, and Re Minor, 180 Pac. Repr. 813; but I do not think it necessary to discuss them, as none is binding on this court, and the question is purely one of construction of this antenuptial agreement.

I would sustain the exceptions.

Henderson, J., concurs in the dissenting opinion.