## Martin Estate

*Wisler, Pearlstine, Talone & Gerber,* for accountant.

*Wells, Campbell, Reynier & Yohn,* for exceptant.

*Richard L. Grossman,* guardian ad litem, p. p.

TAXIS, P. J., April 22, 1966.— . . . The two other claims of Mrs. Martin [decedent's surviving spouse] are embodied in five supplemental objections. These require a recitation of certain facts. Decedent died on October 21, 1963, leaving a will dated February 3, 1960, in which he gave one third of his estate to Louise Phillips Martin, and the balance equally to his issue. These issue number three, all children of decedent and his first wife, Bertha, from whom he was divorced. Prior to the marriage with Louise Phillips Martin, decedent had been married to Dorothy Martin, his second wife, from whom he also had been divorced.

Preliminary to his third marriage, decedent and claimant entered into an antenuptial agreement dated January 16, 1958. This agreement had the usual provisions of such agreements, separating the individual estates of the parties and, insofar as relevant to the present dispute, also contained the following:

"4. Nothing in this agreement shall effect [sic] the rights of LOUISE in and to any all property which the parties may acquire by their joint efforts during their married life. Such property shall be joint property and shall not be subject to this agreement.

"9. In further consideration of the aforesaid antenuptial agreement MARTIN hereby agrees that in the event that he shall predecease LOUISE subsequent to marriage, and they are living together at that time, LOUISE shall receive from the income of the Estate of MARTIN, sufficient funds to assure her an income of $5,000.00 per annum. Consideration should be taken of any other income which may be given to her from the Estate of MARTIN, by Will, or from any other assets which MARTIN may have given LOUISE during their marriage. That this income shall be paid to her during the term of her natural life or until her remarriage.

"She shall further be entitled to receive from the

Estate of MARTIN, the family residence which they may occupy at the time of his death, together with all the furnishings contained therein.

"In the event that the chief asset of the Estate of MARTIN shall consist of the stock of Rodman H. Martin Co., Inc., and there shall be insufficient income in the Estate to provide for the maintenance and education of his children, in that event the income from the Estate shall be apportioned so that the children shall be provided for together with LOUISE without consideration of the sum of $5,000.00 per annum hereinafter set forth. . . ."

The parties were married on February 8, 1958. On August 12, 1958, decedent executed an inter vivos trust agreement funded by certain life insurance policies, and also a will providing that his testamentary estate should pour over into said trust. The trust contained, inter alia, marital deduction provisions and created a $5,000 annuity in favor of Louise Phillips Martin. The trust was revoked according to its provisions by a letter dated February 1, 1960, which action was taken by decedent chiefly because of financial reverses.

Louise Phillips Martin has not remarried. Further, in addition to any interest in this estate which they might have, decedent's children were the beneficiaries of an insurance policy which provides reasonably, if not abundantly, for their maintenance. It has not been contended in this proceeding by either side that decedent's children are not provided for.

At decedent's death, he and claimant were the joint owners of residential real estate worth approximately $40,000, which was encumbered by a mortgage with a balance of $27,027.66. The estate has acknowledged liability for one half of this amount, under the doctrine of contribution toward debts jointly owed by decedent and another: Ballantyne Estate, 1 Fiduc. Rep. 445.

Mrs. Martin, however, claims reimbursement in full from the estate, basing her contention on the language of the antenuptial agreement giving her ". . . the family residence . . ." which she and decedent occupied at the time of his death.

This contention cannot be sustained. Mrs. Martin's ownership of the real estate derives from her tenancy by the entireties, which was created after marriage, and which, by the language of paragraph 4 of the agreement, is not affected thereby. Mrs. Martin and decedent jointly assumed this debt after their marriage, and the situation is entirely different from Bossert Estate, 23 D. & C. 2d 653, 10 Fiduc. Rep. 676, where the surviving spouse was not a party to the mortgage obligation. In addition, the language in the antenuptial agreement, even if applicable, would be far from sufficient to impose an obligation on the estate to pay the whole mortgage debt; it gives Mrs. Martin the home and nothing else. The case is analogous to those under section 14(12) of the Wills Act of April 24, 1947, P. L. 89, which provides that a devise of encumbered property does not itself create an obligation on the part of the estate to satisfy the encumbrance.

Mrs. Martin also claims a sufficient fund (about $72,000) to assure her an annuity of $5,000, according to the provisions of paragraph 9 of the antenuptial agreement. Her contention, in general, is that the agreement renders her a creditor of the estate for a lump sum necessary to carry out its terms, inasmuch as the estate is not to continue in trust, but is subject to final distribution at this time.

We concede that if Mrs. Martin is entitled to receive anything under the provisions of the antenuptial agreement, it would be as creditor, and not as heir or legatee: Coane's Estate, 310 Pa. 138. (See, however, section 662 of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, for an effective qualification

of this rule for tax purposes.) The difficulty with her position is that the language of the agreement confers no unconditional right upon her to receive anything from the estate in any capacity. We reach this conclusion for the following reasons:

First, the agreement provides that claimant should receive her annuity from *income*. There is no income in this estate; nor will there be. The record reveals that decedent believed that his gross estate, including insurance, would be in the area of one half million dollars when he executed the antenuptial agreement. That this belief was reasonably genuine is evident from the fact that this information was also communicated to his insurance underwriter and inter vivos trustee. In this light, the gift of $5,000 from income is reasonable and negates the contention that testator's use of the word "income" might have been loose or inaccurate, or otherwise different from the usual.

Second, it is clear that the chief asset of this estate was stock of Rodman H. Martin Co., Inc., and that, since there is no income at all, the income is necessarily insufficient to maintain and educate decedent's children. Note that we are here concerned with the precise meaning of the words in the agreement, and that they refer only to insufficient income *in the estate* to maintain decedent's children; hence, the fact that the children may now be independently maintained is of no consequence. The result, again, is that Mrs. Martin can take nothing.

Third, and most important, Mrs. Martin is entitled to $5,000 per annum under the terms of the agreement for her life or ". . . until her remarriage. . . ." Clearly, remarriage remains a personal right of Mrs. Martin regardless of what is done here. However, should she be awarded the requested fund on the basis of the antenuptial agreement and at the expense of the other creditors and heirs, it would constitute un-

just enrichment if she should then remarry. Jones's Appeal, 62 Pa. 324, is an old but interesting case cited by claimant, but which actually is authority for the disallowance of her claim. In that case, an antenuptial agreement provided an annuity of $1,500 for wife for life, but if she remarried, the annuity was reduced to $500. Wife had not remarried at the time of presenting her claim under the agreement. The Supreme Court, in upholding the validity of the agreement, recognized the status of the wife as a creditor and allowed her a fund to guarantee an annuity of $500, to which she was clearly entitled under all circumstances. Applying the above to the present case, it is clear that the minimum to which Mrs. Martin is entitled under the antenuptial agreement is zero, should she remarry. Consequently, she can be awarded nothing.

Disallowance of this claim must not be construed as a denial of the validity of the antenuptial agreement. It is obvious that the agreement, the inter vivos trust, and the pour-over will were an integrated testamentary plan; its individual components do not make complete sense by themselves. Nevertheless, although decedent had the right to revoke the trust and to change his will, he had no right to abrogate the antenuptial agreement. Financial circumstances, however, by eliminating all income, have in effect abrogated it, and no agreement can create assets where there are none. Therefore, supplemental objections 1 through 5 inclusive are dismissed.

One other matter remains for disposition. Antonio and Frances Giacobbe filed a claim against the estate for $8,800. The executor admits the claim, but did not list it among the admitted but unpaid claims because in preliminary discussions, it was given to understand that Rodman H. Martin Co., Inc., was liable over and was prepared to pay. Rodman H. Martin Co., Inc., however, now takes the position that it is not liable

over, or in any other fashion, and refuses to pay the claim.

The claim stems from the settlement of an action in assumpsit brought against Rodman H. Martin individually during his life by Antonio Giacobbe. By that settlement, decedent agreed to pay the Giacobbes the sum of $14,000, plus $5,600 agreed interest, for 140 shares of the preferred stock of the company owned by them. Without obtaining corporate approval, decedent, before his death, paid a total of $10,800 on account of this settlement, all with corporate funds. The matter of the "redemption" of this stock, as it was called, was approved by the directors of the company shortly before decedent's death, supposedly in accordance with a prior plan of redemption adopted by the directors, which does not, however, appear in their minutes. The estate takes the position that decedent could and did bind the corporation to perform his agreement with the Giacobbes, and that this court should now require the corporation to pay the $8,800 which remains unpaid under the terms of the settlement.

On the state of the record, the liability of the company is open to serious doubt; but we cannot reach a decision on the merits. This present action is a claim by the estate against an alleged debtor to the estate, and we have no jurisdiction, either exclusive or concurrent, to entertain such a controversy: sections 301 and 302, Orphans' Court Act of August 10, 1951. P. L. 1163; McGovern's Estate, 322 Pa. 379. This may perhaps be unfortunate procedurally where all of the parties are before the court, but the difficulty cannot be corrected here; any judgment or decree entered against Rodman H. Martin Co., Inc., under these circumstances by this court would be a nullity. Accordingly, the claim of Antonio and Frances Giacobbe in the amount of $8,800 is sustained; upon payment of

said sum to them, the estate will succeed to the right of Rodman H. Martin individually to receive stock certificates representing 140 shares of preferred stock of the company. . . .

And now, April 22, 1966, this adjudication is confirmed nisi.

### Opinion sur Exceptions to Adjudication

TAXIS, P. J., September 15, 1966.—Louise Phillips Martin, surviving spouse, has filed exceptions to the adjudication of this court dated April 22, 1966, which, inter alia, dismissed her claims against the estate under a certain antenuptial agreement entered into by her and decedent about one month prior to their marriage in 1958. In brief, the agreement gave claimant an annuity of $5,000 ". . . from the income of the Estate of Martin, . . . during the term of her natural life or until her remarriage". In dismissing her claim, we held that the language of the agreement was unmistakable and (1) limited the source of the annuity to the income of the estate, of which there was none, and (2) the possibility that Mrs. Martin might remarry was a condition which barred her claim to a lump sum sufficient to provide the annuity.

There is no claim that this matter should be decided outside of the language of the agreement. There is no contention that claimant was put upon in any way, or that decedent fell at all short in his admitted duty to deal with his prospective wife in utmost good faith. When it was executed, the agreement was part and parcel of an estate plan which also included an inter vivos life insurance trust and a pour-over will, both of which latter documents were revoked in decedent's lifetime, leaving the antenuptial agreement, which could not be revoked, standing alone. Decedent's financial affairs declined so seriously in the later years of his life that even without Mrs. Martin's claim, his estate is barely solvent.

Exceptant first contends that the limitation to "income" of the annuity in question does not restrict its payment from a fund other than the "net income" of the probate estate. She points out that the word "income" is used in generally different senses in different parts of the agreement, and while this may be so, we are, nevertheless, bound to construe the agreement according to the usual and natural significance of the words used by the parties to it. While exceptant points to the use of the word "income" in several senses, she cannot anywhere show that it was intended to have no significance at all, which would be the result if her contention was upheld, and the annuity paid from principal. In general, of course, a creditor against an estate may collect from either income or principal as they are available, but when the instrument under which claimant seeks to become a creditor restricts the claim to income in the first place, it must be so enforced.

A further barrier exists to Mrs. Martin's recovery here, however. This relates to the provisions of the agreement which terminate her annuity if she remarries. Exceptant seeks to avoid this objection by proposing that the court hold any sum distributable on account of her claim in some protective fashion so that it could be distributed to the other creditors if Mrs. Martin should remarry. Apart from the procedural difficulties with this, however (in all other respects, the estate is ready for distribution, and decedent in his lifetime revoked the only trust which he ever created), it is apparent that the law as set forth in Jones's Appeal, 62 Pa. 324, governs this situation precisely, as set forth in the adjudication. Exceptant's efforts to distinguish that case on the grounds that it awarded an annuity of $500 to the widow, whereas we here are awarding nothing, are unpersuasive, as the reasoning in the case is very clear.

We are well aware of the policy of the appellate courts of the Commonwealth to protect widows' rights against infringement by their husbands, and to look through form at substance in so doing. But we know of no policy which would give to a claimant widow any preference to other creditors whose claims are admittedly valid and based upon full consideration. We think that where a widow is a claimant, she is entitled to that status and no more, and that where her claim is based on a fair and unambiguous contract, setting forth conditions which cannot be met, her claim must fail just as it would if presented by another.

And now, September 15, 1966, the exceptions of Louise Phillips Martin are dismissed.